BARON & BUDD, P.C.
LAURA J. BAUGHMAN, ESQ. *(Pro Hac Vice)*
J. BURTON LeBLANC, IV, ESQ. *(Pro Hac Vice)*
S. ANN SAUCER, ESQ. *(Pro Hac Vice)*
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Tel.: 214-521-3605/Fax: 214-520-1181
lbaughman@baronbudd.com
bleblanc@baronbudd.com
asaucer@baronbudd.com

Of Counsel:
CRONIN, FRIED, SEKIYA, KEKINA & FAIRBANKS
L. RICHARD FRIED, JR.  0764-0
PATRICK F. McTERNAN   4269-0
600 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii 96813
Tel.: 808-524-1433/Fax: 808-536-2073
rfried@croninfried.com
pmcternan@croninfried.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE OF HAWAII, *ex rel.* DAVID M. LOUIE, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE & CO.; CHASE BANK USA, N.A.; and DOE DEFENDANTS 1-20,<br><br>Defendants. | CIVIL NO..: CV12-00263 LEK- KSC (Other Civil Action)<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date:<br>Time:<br>Judge: The Honorable Leslie E. Kobayashi |

| | |
|---|---|
| STATE OF HAWAII, *ex rel.* DAVID M. LOUIE, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK NEVADA, N.A.; HSBC CARD SERVICES, INC.; and DOE DEFENDANTS 1-20,<br><br>Defendants. | CIVIL NO. 12-00266 LEK-KSC (Other Civil Action)<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date:<br>Time:<br>Judge: The Honorable Leslie E. Kobayashi |
| STATE OF HAWAII, *ex rel.* DAVID M. LOUIE, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE BANK (USA) N.A.; CAPITAL ONE SERVICES, LLC; and DOE DEFENDANTS 1-20,<br><br>Defendants. | CIVIL NO. 12-00268 LEK-KSC (Other Civil Action)<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date:<br>Time:<br>Judge: The Honorable Leslie E. Kobayashi |
| STATE OF HAWAII, *ex rel.* DAVID M. LOUIE, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>v.<br><br>DISCOVER FINANCIAL SERVICES, INC.; DISCOVER BANK; DFS SERVICES, L.L.C.; AMERICAN BANKERS MANAGEMENT COMPANY, INC.; and DOE DEFENDANTS 1-20,<br><br>Defendants. | CIVIL NO. 12-00269 LEK-KSC (Other Civil Action)<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date:<br>Time:<br>Judge: The Honorable Leslie E. Kobayashi |

| | |
|---|---|
| STATE OF HAWAII, *ex rel.* DAVID M. LOUIE, ATTORNEY GENERAL,<br><br>        Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, FIA CARD SERVICES, N.A. and DOE DEFENDANTS 1-20,<br><br>        Defendants. | CIVIL NO. 12-00270 LEK-KSC<br>(Other Civil Action)<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date:<br>Time:<br>Judge: The Honorable Leslie E. Kobayashi |
| STATE OF HAWAII, *ex rel.* DAVID M. LOUIE, ATTORNEY GENERAL,<br><br>        Plaintiff,<br><br>v.<br><br>CITIGROUP INC.; CITIBANK, N.A. DEPARTMENT STORES NATIONAL BANK and DOE DEFENDANTS 1-20,<br><br>        Defendants. | CIVIL NO. 12-00271 LEK-KSC<br>(Other Civil Action)<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date:<br>Time:<br>Judge: The Honorable Leslie E. Kobayashi |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................... 1

II.    DISCUSSION AND ANALYSIS.................................................. 3

    A.    The Appeal Presents Unsettled Questions of Controlling Law........... 5

        1.    There is Sufficient Basis for the Ninth Circuit to Conclude that the Fees Charged for the Payment Protection Plans or the Ancillary Services Are Not "Interest" Under the National Bank Act .................................... 5

        2.    Even if the Fees are "Interest," There is Sufficient Basis for the Ninth Circuit to Conclude that the Attorney General is Not Challenging the Rate or the Amount of "Interest".................................................... 10

    B.    This Court Should Stay All Proceedings Pending the Appeal........... 15

III.    CONCLUSION AND PRAYER FOR RELIEF.......................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ben. Nat'l Bank v. Anderson,*
  539 U.S. 1 (2003) ................................................................ 5, 10

*Castro v. Melchor,*
  760 F. Supp. 2d 970 (D. Hawai'i 2010) ................................ 15

*Castro v. Melchor,*
  No. 07-00558 LEK, 2012 U.S. Dist. LEXIS 131790 (D. Haw. Sept. 14, 2012) .................................................................................. 15

*Cross-County Bank v. Klussman,*
  2004 U.S. Dist. LEXIS 7835 (N.D. Cal. Apr. 30, 2004) ............... 11, 14

*FTC v. Pantron I Corp.,*
  33 F.3d 1088 (9th Cir. 1994) ................................................ 14

*Hunter v. Beneficial Nat'l Bank USA,*
  947 F. Supp. 446 (M.D. Ala. 1996) ...................................... 11, 13

*In re Cement Antitrust Litigation,*
  673 F.2d 1020 (9th Cir. 1982) ................................................ 4

*In Re Seven Seas Petroleum Inc.,*
  522 F.3d 575 (5th Cir. 2008) ................................................ 16

*Landis v. North American Co.,*
  299 U.S. 248 (1936) .............................................................. 15

*Nken v. Holder,*
  129 S. Ct. 1749 (2009) .......................................................... 15

*Petrus v. Bowen,*
  833 F.2d 581 (5th Cir. 1987) ................................................ 15

*Richardson v. National City Bank,*
  141 F.3d 1228 (7th Cir. 1998) .............................................. 7, 8

*SEC v. Levine,*
  462 Fed. App'x. 717 (9th Cir. 2011) ..................................... 14

*SEC v. Platforms Wireless Int'l Corp.*,
617 F.3d 1072 (9th Cir. 2010)................................................ 13

*Shamrock Oil and Gas Corp. v. Sheets*,
313 U.S. 100 (1941) .............................................................. 10, 11

*Smiley v. Citibank (S.D.) N.A*,
517 U.S. 735 (1996) ................................................................ 6

*Sullivan v. First Affiliated Securities, Inc.*,
813 F.2d 1368 (9th Cir. 1987)................................................ 10

*The Fair v. Kohler Die & Specialty Co.*,
228 U.S. 22 (1913) ................................................................ 13

*Thompson v. Crane Co.*,
No. 11-00638 LEK, 2012 U.S. Dist. LEXIS 84569 (D. Haw., June 19, 2012)........................................................................ 4, 16

*United States Life Ins. Co. v. Superior Nat'l Ins. Co.*,
591 F.3d 1167 (9th Cir. 2010)................................................ 14

*West Virginia ex rel. McGraw v. JPMorgan Chase & Co.*,
No. 3:11-0683, 2012 U.S. Dist. LEXIS 16403 (S.D. W. Va. Feb. 10, 2012)........................................................................ 7, 8

**STATUTES AND**

12 U.S.C. § 85 ................................................................ 5

12 U.S.C. § 86 ................................................................ 5, 10

28 U.S.C. § 1291 ................................................................ 3

28 U.S.C. § 1292(a)................................................................ 3

28 U.S.C. § 1292(b)................................................................ *passim*

Hawaii Rev. Stat. § 480-2 ................................................................ 13

12 C.F.R. § 7.4001(a)................................................................ 6, 7, 8, 9

12 C.F.R. § 37.1 et seq. ................................................................ 9

## I.   INTRODUCTION

The Hawaii Attorney General David M. Louie's (the "Attorney General") respectfully moves this Court to certify the Court's Order Denying the Motions to Remand (the "Order") (Doc. No. 94), for interlocutory appeal to the Ninth Circuit under 28 U.S.C. § 1292(b).  The Attorney General also respectfully requests a stay of these proceedings pending the outcome of the Ninth Circuit's review.

These cases are about the similar programs created by each of the defendant credit card companies that are alleged to have employed deceptive and misleading tactics to enroll and charge Hawaii consumers for payment protection and other ancillary products.  The tactics alleged included enrolling consumers without their consent, failing to disclose critical features of the programs such as eligibility requirements or the abstruse conditions to utilizing them, and using deceptive and misleading tactics in administering the programs.  Moreover, the Attorney General alleges that these payment protection programs had no redeeming qualities that might otherwise have mitigated the financial injury caused by the Defendants' conduct.  What is contested is the nature of the Defendants' schemes and that fees were charged at all, rather than the amount of the fees.

On November 20, 2012, this Court denied the Attorney General's motion to remand under the "complete preemption doctrine," finding that "the fees assessed for [the payment protection plans] are interest for purposes of the National Bank

Act." *See* Order at 3.  Further, the Court held that "the Attorney General's claims challenge the rate of interest charged by Defendants[.]" *Id.* at 55.

The Attorney General respectfully seeks review of these conclusions in the Ninth Circuit.  While orders denying remand are not appealable as a matter of right, they can be certified for interlocutory appeal under 28 U.S.C. § 1292(b) where the order rests on "a controlling question of law as to which there is substantial ground for difference[.]"

Whether this Court has jurisdiction turns on two related questions: (1) do the fees charged for the payment protection or other ancillary services constitute "interest" under the National Bank Act? And if so, (2) can the Attorney General's allegations only be characterized as a usury claim challenging the rate or amount of interest even though the Attorney General never raises state anti-usury claims?  If the answer to either of these questions is "no," then this Court lacks subject matter jurisdiction.

The Ninth Circuit has yet to address either of these issues. In light of the inconsistent case law both within this Circuit and from other jurisdictions, there are reasonable grounds for seeking clarity from the Ninth Circuit on each of these unsettled questions of law.  Notably, this Court's sister court in the Northern District of West Virginia tackled the exact same arguments and authorities from these defendants and reached a diametrically opposite conclusion that reached by

this Court—holding that the fees were not interest, and that there was not complete preemption supporting removal jurisdiction.  Other courts have likewise taken the opposite approach and reached the opposite conclusions from this Court.

Therefore, the Attorney General respectfully seeks leave to file an interlocutory appeal to the Ninth Circuit to allow it to weigh in on these issues, and respectfully moves for a stay of these proceedings pending the Ninth Circuit's review. Given the time, effort, and cost of litigating cases such as these—both for the Court and the parties—answering these controlling questions of law would materially advance the litigation, and a stay would avoid needless waste attendant to duplicate proceedings.   We respectfully request that the Court avert the possibility that years of litigating six separate cases to trial and final judgment would culminate in a Section 1291 appeal in which subject matter jurisdiction is found to have been lacking in the first instance.

## II.   DISCUSSION AND ANALYSIS

Although the denial of a motion to remand is not generally subject to interlocutory appeals under 28 U.S.C. § 1292(a), here it is proper under subsection (b). Under that provision, an interlocutory appeal is warranted where a civil order "involves a controlling question of law as to which there is substantial ground for difference of opinion and [where] an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See* 28 U.S.C. §

1292(b).  Ultimately, the question comes down to whether there is a sufficient and reasonable basis for the Ninth Circuit to find in plaintiffs' favor on a question of law material to the disposition of the case.  *See In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982).  If so, then allowing for the interlocutory appeal is appropriate.

In a recent decision certifying for interlocutory appeal the denial of a motion for remand, the Court held that "[q]uestions of law appropriate for interlocutory appeal include 'the determination of who are necessary and proper parties, whether a court to which a cause has been transferred has jurisdiction, or whether state or federal law should be applied.'"  *Thompson v. Crane Co.*, No. 11-00638 LEK, 2012 U.S. Dist. LEXIS 84569, *15 (D. Haw., June 19, 2012) (Kobayashi, DJ.) (citations omitted). *Thompson* rightly observes that certifying the denial of remand for appeal is justified where, "if the Ninth Circuit reverses this Court's ruling that federal jurisdiction exists, the Ninth Circuit will order that the case be remanded to the state court, terminating the action in this district court.  Thus, the outcome of Plaintiff's proposed interlocutory appeal 'could materially affect the outcome of litigation in the district court.'" *Id.* at *17 (citations omitted).

Here, as in *Thompson*, certification for interlocutory appeal is appropriate because the standards under Section 1292(b) are met—there are two unsettled yet

controlling questions of law which would dispose of this case. And a stay pending that appeal would avoid needless waste of time and resources.

## A. The Appeal Presents Unsettled Questions of Controlling Law

There is no dispute that if the Attorney General was challenging the rate of interest charged by a national bank, then those claims would be usury claims preempted under 12 U.S.C. §§ 85 and 86. *See Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 15 (2003). However, this case is not a usury case; the Attorney General did not bring any state usury claims. Accordingly, this appeal would present two unsettled controlling questions of law—(1) do the fees charged for the payment protection or other ancillary services constitute "interest" under the National Bank Act? And if so, then (2) can the Attorney General's allegations only be characterized as a usury claim challenging the rate or amount of interest even though the Attorney General never raises any state anti-usury claims? If the answer to either of these questions is "no," then remand is proper.  ***

### 1.  There is Sufficient Basis for the Ninth Circuit to Conclude that the Fees Charged for the Payment Protection Plans or the Ancillary Services are Not "Interest" Under the National Bank Act

While the National Bank Act does not define "interest," the OCC regulation does:

> The term "interest" as used in 12 U.S.C. 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes,

> among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports.

12 C.F.R. 7.4001(a). The Supreme Court in *Smiley* construed this provision to exclude from the scope of interest any fees that are "specifically assigned to [expenses for] insuring the loan":

> [I]t seems to us perfectly possible to draw a line, as [12 C.F.R. § 7.4001(a)] does, between (1) 'payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended,' and (2) all other payments.... [I]t seems to us quite possible and rational to distinguish, as the regulation does, between those charges that are *specifically assigned* to such expenses and those that are assessed for simply making the loan, or for the borrower's default.

*Smiley v. Citibank (S.D.),* N.A, 517 U.S. 735, 741-42 (1996) (emphasis in original).

Thus, the question is whether the Attorney General's complaints allege that the fees charged for the payment protection programs were "specifically assigned" to those products. If so, then there is ample basis for the Ninth Circuit to conclude that those fees are not "interest" under the National Banking Act. This Court itself acknowledged, along with the defendants' affidavits, that the fees are charged

specifically for the various ancillary products, but only for those who enroll in the specific programs and only for those services. *See* Order at 23-25; *see also id.* at 50-51 (discussing affidavits).

In *West Virginia ex rel. McGraw v. JPMorgan Chase & Co.,* No. 3:11-0683, 2012 U.S. Dist. LEXIS 16403 (S.D. W. Va. Feb. 10, 2012), the district court concluded that the fees were not interest, particularly because the "fees are not compensation for 'extending' a line of credit.  Many consumers holding credit cards offered by Defendants do not participate in the plans, and if they do, may stop participating in the plans without losing their credit account." 2012 U.S. Dist. LEXIS 16403, **17-18.  The Ninth Circuit could reasonably hold the same way, while disagreeing with this Court's contrary conclusion.

Similarly, the Ninth Circuit could agree with the Seventh Circuit's finding in *Richardson v. National City Bank*, 141 F.3d 1228, 1229 (7th Cir. 1998). There, the defendant purchased insurance on automobiles that it financed, and then charged the premiums to the borrowers. The circuit court found that the fees were not interest even if they were tied to an extension of credit. First, the court observed that the last part of Section 7.4001(a) expressly excludes "premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit." *Id.* at 1231. The court also noted *Smiley's* construction of that regulation and its distinction between interest and "charges that are '*specifically assigned* to

expenses [such as insuring the loan]." Based upon these two premises, the circuit court held that the fees charged for the insurance were not interest both because they were fees for "insurance" intended to guarantee repayment of the loan, and because they were "specifically tied" to a service other than the underlying extension of credit. The court also held that because the insurance program was intended to benefit both the borrower and creditor, it fell outside of the definition of "interest," which specifically only "compensates the creditor" for the extension of credit. *Id.*

Here, the Ninth Circuit has a reasonable basis to conclude that payment protection programs equate closest to "insurance guaranteeing repayment" because each gives the consumer the benefit of forbearance or forgiveness while giving the bank a means of seeking repayment from the underwriter of the payment protection plan. Thus, as in *Richardson*, the payment protection plans benefit both the credit card company and the consumer, and the fees are tied to that service, not to the extension of credit itself. *See also JPMorgan Chase*, 2012 U.S. Dist. LEXIS 16403, *21 ("The plans are like insurance, in that they offer some added protection against default, and also like the other fees listed as 'not interest' under § 7.4001(a), which are 'specifically assigned' to cover services other than loan extension and maintenance.").

Moreover, the regulations plainly anticipate that regardless of whether debt cancellation or debt suspension agreements are part of or separate from the underlying loan terms (the credit card agreement), the payment of fees for debt cancellation or debt suspension products are separate and apart from the interest charged against the underlying indebtedness. 12 C.F.R. § 37.1 specifically states that what the bank is charging is a "fee" for the debt suspension services it offers in connection with the extension of credit.  *See* 12 C.F.R. § 37.1 ("A national bank is authorized to enter into debt cancellation contracts and debt suspension agreements ***and charge a fee therefor***, in connection with extensions of credit that it makes") (emphasis added). Given common canons of statutory construction, the Ninth Circuit could reasonably conclude that the fees are not interest because: Section 37.1 only authorized fees that are specifically "for" the "debt suspension agreements" and not to "compensate the creditor…for the extension of credit," under Section 7.4001(a)'s definition of "interest."[1]

Accordingly, there is a reasonable basis for a difference of opinion on this controlling question of law.  There are sufficient reasonable grounds for the Ninth

---

[1] This premise would have the additional impact of nullifying the core argument advanced in the defendants' affidavits—that because the debt suspension agreements and debt cancellation agreements involve an "extension of credit" that their fees are necessarily "interest." The regulations make clear that both Congress and the OCC did not intend for the fees compensating the credit card companies for the payment protection plans to be deemed "interest." Had they so intended, then they would have and could have used the term "interest" in 12 C.F.R. § 37.1 et seq., as they did in 12 C.F.R. § 7.4001(a).

Circuit to conclude that the fees were specifically charged for payment protection and other ancillary service, not as "interest" on the underlying credit card's extension of credit. As such, payment protection fees are not "interest" under the National Bank Act and are not subject to preemption.

### 2. Even if the Fees are "Interest," There is Sufficient Basis for the Ninth Circuit to Conclude that the Attorney General is Not Challenging the Rate or the Amount of "Interest"

In *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1 (2003), the Supreme Court held that state usury claims against national banks are completely preempted by 12 U.S.C. §§ 85 and 86. However, there, the "complaint sought relief for 'usury violations'" and "expressly charged [the bank] with usury." 539 U.S. at 9. Here, that is not the case. In fact, the Attorney General has never raised a state law usury claim and disavows that he intended to do so. Thus, there is an unsettled question of law of whether a complaint that does not raise state usury claims can still be preempted for the purposes of removal jurisdiction as if it had raised such claims.

The party seeking removal has the burden of establishing federal jurisdiction. *Sullivan v. First Affiliated Securities, Inc.,* 813 F.2d 1368, 1371 (9th Cir. 1987). "Because the removal statutes are strictly construed against removal, generally speaking, all doubts about removal must be resolved in favor of remand." *Shamrock Oil and Gas Corp. v. Sheets,* 313 U.S. 100, 104 (1941). Accordingly, where there are two reasonable constructions of the allegations—one that supports

federal jurisdiction and another that does not—then the Court must not take up jurisdiction. *Id.* In *Hunter v. Beneficial Nat'l Bank USA*, 947 F. Supp. 446, 452 (M.D. Ala. 1996), the plaintiffs alleged fraud in the way interest was assessed. The district court noted that none of the plaintiffs' state law claims were couched specifically in terms of the amount of the fees being too high, nor had they brought state-law usury claims. The court determined that there could not be "complete preemption" because the court was bound to resolve the uncertainty between the two competing constructions of the complaint in favor of remand. *Id.* at 541.

*Cross-County Bank v. Klussman*, 2004 U.S. Dist. LEXIS 7835 (N.D. Cal. Apr. 30, 2004) addressed a similar circumstance. There, the defendants contended that a challenge to the deceptive way in which fees were disclosed was really a challenge to the rate of interest, citing the plaintiffs' allegations of "excessive" or "exorbitant" interest being charged. *Id.* at \*22. The court held that these were mere incidents of the overall complaint which challenged the deceptive scheme:

> The gravamen of Plaintiff's complaint is that Defendants misrepresented the nature and cost of their services -- not that they charged a usurious rate of interest. As far as interest is concerned, Plaintiff merely contends that Defendants wrongfully assessed interest on charges that Plaintiff contends were improper. Plaintiff is not contesting the rate of interest Defendants assessed but the fact that it was assessed at all on charges she believes were assigned in bad faith.

*Id.* That is precisely the issue here. What is contested is the nature of the Defendants' scheme and that fees were charged at all — if the services had not

been deceptively marketed and sold, the Attorney General would not be contesting the amount charged.

Defendants' characterization of the allegations as solely challenging the fees as excessive is not the only, nor the most reasonable, characterization. The Attorney General claims that the payment protection programs and ancillary products were insidious schemes designed to mislead and deceive consumers.[2] Any allegation regarding the absurdly high amount of fees collected simply states the magnitude of the scheme's impact and its significant effect on Hawaii consumers —it is not necessarily a challenge to the amount of the fees charged or an allegation that the fees were usurious.[3] Any allegation regarding the fact that, for instance, ineligible or elderly consumers were enrolled without being eligible is a species of "slamming" because the defendants enrolled them without their knowing consent. Any allegation that consumers got nothing out of these programs does not say that the "price was too high," but rather that these programs had no redeeming qualities whatsoever to mitigate or offset the injuries caused by the deceptive and misleading schemes. All of these allegations are critical predicates to the Attorney General's right to bring actions for disgorgement and penalties, the scope and quantum of which turn on the severity and willfulness of the actions.

---

[2] *See, e.g.,* JPMorgan Chase Complaint at ¶¶ 3-6, 20, 32-38, 46-48, 59.
[3] *See, e.g.,* JPMorgan Chase Complaint at ¶ 69.

While the Attorney General believes that defendants' strategy of isolating some of the allegations and polishing them with a new veneer to claim jurisdiction is inaccurate, the Attorney General's competing construction of his own allegations should take precedence—especially because the Attorney General repeatedly disavowed any construction of the allegations that would trigger federal jurisdiction or preemption. The Attorney General, as the plaintiff, is master of his complaint and the sole decider of what rights and law he seeks to invoke. *See The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913). Thus, he has the prerogative to rely upon any particular theory of law although there are other theories which may give him a cause of action. *Hunter*, 947 F. Supp. at 452. Here, the Attorney General consistently alleged a broad deceptive and misleading scheme which violates Hawaii Rev. Stat. § 480-2's prohibition against "unfair methods of competition or deceptive acts or practices[.]" If the Ninth Circuit agrees that that is a reasonable construction of the allegations and pleadings, then remand is proper.

The Attorney General's unjust enrichment claim does not challenge the *amount* of the fees. Unjust enrichment is often alleged in the alternative by government agencies because the remedy—disgorgement—is equitable in nature and allows the government the opportunity to both punish and deter. *See, e.g., SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) ("[A]

district court has broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws. Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable."); *United States Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1179 (9th Cir. 2010) (affirming order of disgorgement and amount sufficient to avoid unjust enrichment of the defendants accused of deceptive promotional activities); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1103 n.34 (9th Cir. 1994) (ordering false advertisers to disgorge all ill-gotten gains under unjust enrichment theory); *SEC v. Levine*, 462 Fed. App'x. 717, 719 (9th Cir. 2011) (upholding SEC remedy of disgorgement of all ill-gotten gains to avoid unjust enrichment). Thus, if the Attorney General proves that the Defendants obtained fees for the protection plans and ancillary products using fraud and deception, then the Defendants have been unjustly enriched and are subject to disgorgement regardless of the amount of the fee charged per product. *See cf. Klussman*, 2004 U.S. Dist. LEXIS 7835, *22 (stating that fraud claim seeking to recover or disgorge "exorbitant" or "excessive" interest charges as damages did not amount to usury claim).

Thus, the Ninth Circuit would have reasonable grounds to find, as several other courts have found, that the allegations taken together allege a scheme to

deceive and mislead through-and-through, which is not preempted under the National Bank Act.

## B. This Court Should Stay All Proceedings Pending the Appeal

This Court is master of its docket and has near unfettered discretion—limited only by the risk of prejudice to the parties before it—to manage its schedule. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to continue proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket").

Courts—including this one—routinely grant continuances and stays when doing so would conserve judicial and party resources, and to avoid duplicative or redundant proceedings. *See, e.g., Castro v. Melchor*, No. 07-00558 LEK, 2012 U.S. Dist. LEXIS 131790, at *4 n.1 (D. Haw. Sept. 14, 2012) (Kobayashi, DJ.) (staying proceedings pending appeal of partial summary judgment) (citing *Castro v. Melchor*, 760 F. Supp. 2d 970, 1005 (D. Hawai'i 2010)); *see also Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) (granting stay pending resolution of one party's motion to dismiss the lawsuit). The Supreme Court likewise recently held that a continuance is justified "to allow an appellate court the time necessary to review" the legal and appellate issues before it. *See Nken v. Holder*, 129 S. Ct. 1749, 1754 (2009).

Foreshadowing, these cases will place a significant demand on the time, effort and resources of the parties and the Court. However, an appellate ruling that there is no federal subject matter jurisdiction here would mean that this Court's involvement in the case is over, and all substantive decisions rendered by this Court would be null and void. *See, e.g., In Re Seven Seas Petroleum Inc.*, 522 F.3d 575, 590 (5th Cir. 2008) (vacating federal court's decision on motions to dismiss because federal court lacked subject matter jurisdiction). Further, "if the Ninth Circuit reverses this Court's ruling that federal jurisdiction exists, the Ninth Circuit will order that the case be remanded to the state court, terminating the action in this district court." *Thompson*, 2012 U.S. Dist. LEXIS 84569 at *17.

There is little good served by potentially litigating these matters twice. Meanwhile, staying the case pending a decision on remand from the Ninth Circuit would not prejudice the Defendants whatsoever. Accordingly, the most efficient process is to issue a stay pending the Ninth Circuit's ruling on this novel and disputed issue of law.

## III.   CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the State respectfully moves this Court to certify the Court's Order Denying the Motions to Remand (Docket No. 94), for interlocutory appeal to the Ninth Circuit under 28 U.S.C. § 1292(b). The Attorney

General also respectfully requests a stay of these proceedings pending the outcome of the Ninth Circuit's review.

DATED:  Honolulu, Hawai`i, December 10, 2012.

RESPECTFULLY SUBMITTED,

_____

CRONIN, FRIED, SEKIYA, KEKINA & FAIRBANKS
L. RICHARD FRIED, JR.  0764-0
PATRICK F. McTERNAN  4269-0
600 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii 96813
Tel.: 808-524-1433/Fax: 808-536-2073
rfried@croninfried.com
pmcternan@croninfried.com

BARON & BUDD, P.C.
LAURA J. BAUGHMAN, ESQ.
*(Admitted Pro Hac Vice)*
J. BURTON LeBLANC, IV, ESQ.
*(Admitted Pro Hac Vice)*
S. ANN SAUCER, ESQ.
*(Admitted Pro Hac Vice)*
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Tel.: 214-521-3605/Fax: 214-520-1181
lbaughman@baronbudd.com
bleblanc@baronbudd.com
asaucer@baronbudd.com

Attorneys for Plaintiff