BARON & BUDD, P.C.
LAURA J. BAUGHMAN, ESQ. *(Pro Hac Vice)*
J. BURTON LeBLANC, IV, ESQ. *(Pro Hac Vice)*
S. ANN SAUCER, ESQ. *(Pro Hac Vice)*
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Tel.: 214-521-3605/Fax: 214-520-1181
lbaughman@baronbudd.com
bleblanc@baronbudd.com
asaucer@baronbudd.com

Of Counsel:
CRONIN, FRIED, SEKIYA, KEKINA & FAIRBANKS
L. RICHARD FRIED, JR.  0764-0
PATRICK F. McTERNAN  4269-0
600 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii 96813
Tel.: 808-524-1433/Fax: 808-536-2073
rfried@croninfried.com
pmcternan@croninfried.com

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE OF HAWAII, *ex rel.* DAVID M. LOUIE, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE & CO.; CHASE BANK USA, N.A.; and DOE DEFENDANTS 1-20,<br><br>Defendants. | CIVIL NO. CV12-00263 LEK- KSC (Other Civil Action)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date: January 18, 2013<br>Time:           10:00 a.m.<br>Judge: The Honorable Leslie E. Kobayashi |

| | |
|---|---|
| STATE OF HAWAII, *ex rel.* DAVID M. LOUIE, ATTORNEY GENERAL,<br><br>        Plaintiff,<br><br>v.<br><br>HSBC BANK NEVADA, N.A.; HSBC CARD SERVICES, INC.; and DOE DEFENDANTS 1-20,<br><br>        Defendants. | CIVIL NO. 12-00266 LEK-KSC<br>(Other Civil Action)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date: January 18, 2013<br>Time: 10:00 a.m.<br>Judge: The Honorable Leslie E. Kobayashi |
| STATE OF HAWAII, *ex rel.* DAVID M. LOUIE, ATTORNEY GENERAL,<br><br>        Plaintiff,<br><br>v.<br><br>CAPITAL ONE BANK (USA) N.A.; CAPITAL ONE SERVICES, LLC; and DOE DEFENDANTS 1-20,<br><br>        Defendants. | CIVIL NO. 12-00268 LEK-KSC<br>(Other Civil Action)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date: January 18, 2013<br>Time: 10:00 a.m.<br>Judge: The Honorable Leslie E. Kobayashi |
| STATE OF HAWAII, *ex rel.* DAVID M. LOUIE, ATTORNEY GENERAL,<br><br>        Plaintiff,<br><br>v.<br><br>DISCOVER FINANCIAL SERVICES, INC.; DISCOVER BANK; DFS SERVICES, L.L.C.; AMERICAN BANKERS MANAGEMENT COMPANY, INC.; and DOE DEFENDANTS 1-20,<br><br>        Defendants. | CIVIL NO. 12-00269 LEK-KSC<br>(Other Civil Action)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date: January 18, 2013<br>Time: 10:00 a.m.<br>Judge: The Honorable Leslie E. Kobayashi |

| | |
|---|---|
| STATE OF HAWAII, *ex rel.* DAVID M. LOUIE, ATTORNEY GENERAL,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, FIA CARD SERVICES, N.A. and DOE DEFENDANTS 1-20,<br><br>　　　　Defendants. | CIVIL NO. 12-00270 LEK-KSC (Other Civil Action)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date: January 18, 2013<br>Time:　　　 10:00 a.m.<br>Judge: The Honorable Leslie E. Kobayashi |
| STATE OF HAWAII, *ex rel.* DAVID M. LOUIE, ATTORNEY GENERAL,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CITIGROUP INC.; CITIBANK, N.A. DEPARTMENT STORES NATIONAL BANK and DOE DEFENDANTS 1-20,<br><br>　　　　Defendants. | CIVIL NO. 12-00271 LEK-KSC (Other Civil Action)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date: January 18, 2013<br>Time:　　　 10:00 a.m.<br>Judge: The Honorable Leslie E. Kobayashi |

## INTRODUCTION

Before this Court is the Attorney General's motion to certify the Court's Order denying remand for interlocutory appeal.[1] Nothing in the Defendants' briefing rebuts the Attorney General's fundamental premise that there are two unsettled controlling questions of law: (1) do the fees charged for the payment protection or other ancillary services constitute "interest" under the National Bank Act? And if so, (2) can the Attorney General's allegations only be characterized as a usury claim challenging the rate or amount of interest even though the Attorney General never raises anti-usury claims? The Defendants cannot deny that if the answer to either of these questions is "no" – or is not a definitive "yes," then this Court lacks subject matter jurisdiction. Yet, Defendants offer no alternative course, and effectively concede that they are asking the Court to expend valuable judicial resources to no avail should this case be litigated through trial, only for the Court to be divested of jurisdiction on appeal of the merits.

Under Title 28 of the United States Code, Section 1292(b), "a controlling question of law as to which there is substantial ground for difference of opinion" may be certified where immediate appeal "may materially advance the ultimate

---

[1] Docket 95, Motion for Certification of Question for Interlocutory Appeal under 28 U.S.C. § 1292(b) and Motion to Stay Proceedings; *see also* Docket 95-1, Attorney General's Memorandum in Support of Motion to Certify for Interlocutory Appeal under 28 U.S.C. § 1292(b) and Motion to Stay Proceedings (hereinafter "Mot. to Certify Mem.").

1

termination of the litigation." The certification standard is met here. Whether the complete preemption doctrine applies to state laws protecting against the deceptive marketing, sale and administration of payment protection plans is a controlling legal question that has never been resolved in Defendants' favor prior to this litigation.

The certification request seeks to promote and preserve the judicious use of the Court's time and resources. If the Ninth Circuit does not find federal subject matter jurisdiction, then the orders and judgments issued by this Court in six cases will be null and void. Subject matter jurisdiction cannot be waived. It is a fundamental issue that the judiciary "is bound to ask and answer for itself," including at the appellate level. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (cit. & quote om.). "Without jurisdiction the court cannot proceed at all in any cause." *Id*. Certification here will insure that the Court's resources are well managed and not squandered needlessly.

Defendants' opposition to the certification request relies on four misconstructions of the issues and record, which are addressed in turn below. First, the Attorney General strongly disputes that Defendants have articulated the "controlling law," and Defendants' contention that "the Attorney General does not

dispute" the formulation of "the controlling principles of law"[2] is demonstrably incorrect. Second, there is no "well-settled" law supporting federal jurisdiction under Defendants' complete preemption theory. Third, the fact that subject matter jurisdiction is potentially lacking supports certification, notwithstanding Defendants' contrary argument that this "makes no difference" (Def. Resp., p. 23). Fourth and finally, this case does not present an "uncontroverted factual" record, as claimed by Defendants (Def. Resp., p. 14).

I.  **The Controlling Questions of Law Are Not Settled In the Ninth Circuit or the Supreme Court; Therefore, Defendants' Argument to the Contrary Is Unavailing.**

The defense opposition relies on the repeated contention that the Attorney General does not contest the "controlling" rule and principles of law, but rather the application of law to fact. Def. Resp., pp. 11, 15. This contention is inaccurate, and overlooks the repeated invocations that the controlling questions of law are unsettled. The Attorney General very clearly disputes the legal formulation deemed controlling by Defendants, including in the following respects:

---

[2] Defendants' Jt. Mem. in Opp. to Plaintiff's Mot. for Certification of Question for Interlocutory Appeal Under 28 U.S.C. § 1292(b) and Mot. to Stay Proceedings filed Dec. 10, 2012, Dkt. 98 filed 12/27/2012 (hereinafter "Def. Resp."), at p. 15.

**A.  The Defendants' preferred construction of the definition of "interest" is not settled because Congress intended a remedy for usury, not for the consumer protection claims pled by the Attorney General.**

Defendants' definition of "interest" is not controlling. As the Attorney General has repeatedly maintained in this case, the doctrine of complete preemption announced in *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003) is inapplicable because "[t]he Complaint is bereft of any usury theory. There is no challenge that the rate of interest is too high." Mot. to Remand (*e.g.* Dkt. 37), p. 4 ¶11. "What is contested is the nature of the Defendants' schemes and that fees were charged at all, rather than the amount of the fees." Mot. to Certify Mem., Dkt. 95-1, at p. 1. "[T]he Complaints nowhere argue that the rate of interest is excessive; rather, each Complaint faults Defendants for charging customers for ancillary service plans that they did not sign up for or were deceived into signing up for." Remand Mem. (*e.g.*, Dkt. 37-1), p. 32. The Attorney General has thus always maintained that the definition of "interest" is not outcome-determinative because, "[e]ven if the payment protection plan charges can be defined as interest, which is denied, the extraordinary and rare complete preemption doctrine is inapplicable.... [because] the Complaints do not challenge the 'rate' of these over-charges, but rather the fact and manner of them." Remand Mem. (*e.g.*, Dkt. 37-1), p. 31.

4

Defendants would evade this point, but cannot deny it. In *Beneficial Nat'l*, the complaint expressly "sought relief for 'usury violations'" and "expressly charged [the bank] with usury"; complete preemption only applies if Congress intended Title 12, United States Code Section 86 to provide the exclusive cause of action. *Beneficial Nat'l*, 539 U.S. at 9 (quoted at Remand Mem. (*e.g.*, Dkt. 37-1), p. 31). Even were the payment protection charges construed as "interest," Section 86 only provides a remedy for charging interest in excess of the legal rate, and does not provide any remedy for the unfair and deceptive acts and practices Defendants employ to market, sell, and administer the payment protection and other ancillary service plans. Whether Section 86 is the exclusive remedy such that the state consumer protection cases are completely preempted under the *Beneficial Nat'l* paradigm is a *legal* issue. In that the Attorney General has consistently and repeatedly denied (as quoted above) that there is any challenge to an excessive rate as necessary to state a usury claim, the Attorney General has never agreed that the definition of interest is controlling so as to establish federal subject matter jurisdiction. Defendants' contention that the Attorney General does not dispute the controlling law is irreconcilable with the above-quoted record proving the contrary.

### B. Independently, the Attorney General disputes the legal formulation of the definition of interest.

As a matter of law the payment protection service products are not interest, including among other reasons because the federal Part 37 regulations these

5

Defendants point to prohibit this interpretation. *See* Remand Mem. (*e.g.*, Dkt. 37-1), p. 28 (citing 12 C.F.R. § 37.3(a); *West Virginia ex rel. McGraw v. JPMorgan Chase & Co.,* 842 F. Supp. 2d 984 (S.D. W. Va. 2012)); *see also generally,* Remand Mem., pp. 27-31 (legal analysis explaining that payment protection charges do not fall within the definition of interest); Mot. to Certify Mem., pp. 5-10 (legal analysis of case law and regulations explaining that under the law, the charges are not interest). On the face of the briefing, this analysis is based on the jurisprudence rather than on any factual dispute. *See id.; see also* Pl.'s Remand Reply, Dkt. 78, at p. 17 (explaining that the defense declarations do not change the *JPMorgan* analysis and that even accepting the defense argument based on the declarations, the fees cannot be considered interest). The Attorney General's position is that the federal regulations (*e.g.,* 12 C.F.R. § 37.3(a)), prohibit Defendants from extending the credit conditioned upon a customer's putative acquiescence in a payment protection service plan. This claim cannot be altered by factual claims made by Defendants in opposition to a motion to remand. The case law and regulations compel the conclusion that the charges are not interest charges, and independently, are more akin to charges carved out of the interest definition.

In short, the Attorney General contends that payment protection plans cannot be categorized as interest regardless of the self-serving factual claims made by half

of these Defendants in declarations.[3] Therefore, the mix of fact and law pointed to by Defendants misses the point.

### C. Defendants err in presuming that a factual dispute negates the existence of "a controlling question of law" under Section 1292(b).

Defendants argue that because the parties dispute the characterization of the Complaints, subject matter jurisdiction cannot be certified under Section 1292(b). *See* Def. Resp., p. 17. First, the Attorney General's argument includes a challenge to the *legal standard* by which the Complaint is interpreted; specifically, because all doubts are strictly construed against removal, where there are different potential constructions of the allegations, the construction that does *not* support federal jurisdiction must be adopted *as a matter of law. See* Mot. to Certify Mem., Doc. 95-1, pp. 10-11. This is not a dispute of fact. The Attorney General contends that the legal principles, including those articulated in *Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012) *inter alia,* compel a different analysis and a different standard for assessing the Complaints than that employed to find jurisdiction.

Second and independently, the fact that the Order at issue included an examination and characterization of the pleadings does not remove it from Section 1292(b)'s reach. Defendants' "mixed" fact and law argument presumes that the

---

[3] Half of the Defendants rely solely on declarations rather than on documentary evidence, and half of the Defendants have submitted no factual evidence, either in the form of declarations or otherwise. No Defendant has filed business records in which the Defendant in the course of business defined the payment protection plan charges as "interest", either internally or to customers.

7

prospect of any factual issue disqualifies the Order from certification, but this is not the case. In *Thompson v. Crane Co.*, No. 11-00638 LEK, 2012 U.S. Dist. LEXIS 84569, at *17 (D. Haw., June 19, 2012) (cited at Mot. to Certify Mem., pp. 4, 16), this Court "addressed some questions of fact" related to the United States Navy's actions and determined that federal officer removal jurisdiction existed. The Court nonetheless concluded that because legal issues were at the heart of the plaintiff's proposed interlocutory appeal, the appeal presented controlling questions of law that were certified by this Court pursuant to Section 1292(b). *Id.* at **17-18. This analysis applies here, as the Attorney General consistently has advanced issues of law challenging federal jurisdiction.

Defendants fail to cite any authority supporting their departure from the analysis this Court applied in *Thompson*. Rather, Defendants misplace reliance on decisions that do *not* stand for the proposition that certification is unavailable merely because the legal analysis includes a characterization of the pleadings. For example, the court in *Semeneck v. Ahlin* (cited at Def. Resp., p. 17) screened and dismissed a *pro se* detainee's original and supplemental civil rights complaints, stating on the issue of certification that, "The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact, or whether the district court properly applied settled law to the facts," and that the term "question of law" does not "mean any question, the decision of which requires rooting

8

through the record in search of the facts or of genuine issues of fact." *Semeneck v. Ahlin*, No. 1:09-cv-00566-SMS, 2010 U.S. Dist. LEXIS 68621, at *7 (E.D. Cal. June 16, 2010) (cit. om.). Here, the Attorney General will not require that the Ninth Circuit "root[] through the record."[4] That the Ninth Circuit can readily analyze the complaints for the existence of federal question jurisdiction is exemplified in *Nevada v. Bank of Am. Corp.*, 672 F.3d at 675. There, after rejecting CAFA jurisdiction, the Ninth Circuit analyzed Nevada's complaint and found a lack of federal question jurisdiction. The court indeed rejected the argument that it should abstain from deciding federal question jurisdiction, and made the determination that such jurisdiction did not exist based on Nevada's complaint and the jurisprudence.[5]

Finally, Defendants take irreconcilable positions on the issue of whether there is a dispute of fact. To the extent this case presents an "uncontroverted factual" record as claimed by Defendants (Def. Resp., p. 14), that directly supports

---

[4] The Attorney General's position is that there is no factual record supporting Defendants' arguments (*see* Section IV *infra*).

[5] Nor is Defendants' argument supported by *Anschutz Corp. v. Merrill Lynch & Co.*, No. C 09-03780 SI, 2011 U.S. Dist. LEXIS 58287 (N.D. Cal. June 1, 2011) (cited at Def. Resp., pp. 12, 17), wherein the court found that the issue of whether rating agencies owed a legal duty as alleged by plaintiffs was "not novel" and that the prerequisites for such a duty were "well-settled". 2011 U.S. Dist. LEXIS 58287, at **7, 8. The Order at issue here, by contrast, is the first instance of Defendants' success in claiming that the payment protection plan charges are interest payments.

the Attorney General's position because it means that all that is left to be resolved is the legal impact of those facts.

## II. The "Controlling Law" Is Not "Well-Settled."

Defendants' opposition relies upon the repeated claim that subject matter jurisdiction here is based on "settled law." Def. Resp., pp. 8, 9; *see also id.* at p. 11 (alleging "'routine application[] of well-settled legal standards'"; cit. om.). That claim is inaccurate. The court in *West Virginia ex rel. McGraw v. JPMorgan Chase & Co., supra,* arrived at the opposite conclusion in addressing complete preemption of an Attorney General's state consumer protection case challenging the unfair and deceptive marketing, sale, and administration of these same Defendants' payment protection plans. Prior to this case, no "settled" law -- or indeed any case, statute, regulation or agency interpretation – defined any payment protection plan as interest.

## III. An Interlocutory Appeal Will Materially Advance the Termination of the Litigation and Is Necessary to Preserve Valuable Judicial Resources.

Whether the federal judiciary has subject matter jurisdiction is a controlling legal question. *See Thompson, supra.* Defendants, however, ask that the Court continue to make rulings in this case, including rulings on the upcoming motions to dismiss, notwithstanding the possibility that the Court's time and efforts might be mooted for lack of jurisdiction. Resolving the threshold jurisdictional question sooner rather than later is necessary to preserve the Court's valuable judicial

resources. Defendants' plan to protract the litigation before the Court is inefficient and fails to protect the Court's time.

Notwithstanding that the jurisdictional question presents the possibility that the Court's orders in six cases would be rendered void, Defendants contend that this allegedly "makes no difference," and cite one published and two unpublished cases as examples. *See* Def. Resp., p. 23. Far from deeming the potential lack of jurisdiction "no difference," one decision recognized that such issues are controlling for purposes of Section 1292(b) certification: "The court recognizes that, since an incorrect resolution of the remand question would require reversal of the final judgment, such a question is 'controlling.'" *Binkley v. Loughran*, 714 F. Supp. 774, 775 (M.D. N.C. 1989).

Further, these decisions do not suggest that certification should be denied where, as here, the only other court to address the issue has found that for two independent reasons subject matter jurisdiction is lacking. *See West Virginia ex rel. McGraw v. JPMorgan Chase & Co., supra.* Rather, Defendants' cited decisions rest on truly settled issues of federal jurisdiction (*e.g.*, ERISA).[6]

---

[6] *Dowd v. New England Tel. & Tel.*, C.A. No. 89-705, 1989 U.S. Dist. LEXIS 11775, at *5 (D. Mass. Aug. 3, 1989) (cited at Def. Resp., pp. 7, 23) (federal jurisdiction existed based upon "a well-settled principle of ERISA preemption"); *see also Van Scoy v. New Albertson's Inc.*, 2011 U.S. Dist. LEXIS 18587, at *3 (E.D. Cal. Feb. 8, 2011) (cited at Def. Resp., pp. 7, 23) (discussing the "strong" preemptive force of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*).

11

In promoting a judicial policy hostile to interlocutory appeal, Defendants misplace reliance on *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 130 S. Ct. 599 (2009) (cited at Def. Resp., p. 23). The *Mohawk* Court explained that the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), allows a "'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final'" pursuant to Section 1291. *Mohawk*, 130 S. Ct. at 605. Ultimately, the court cautioned that the doctrine should be applied on a limited basis, and held that the appeal from a disclosure order was properly dismissed by the Eleventh Circuit. *Id.* at 609. *Mohawk*'s analysis of the judicially-defined *Cohen* doctrine does not limit the statutory grant of appellate jurisdiction in Section 1292. *See, e.g., S.E.C. v. Janvey*, 404 Fed. Appx. 912, 914 n. 1 (5th Cir. 2010) (*"Mohawk* is not applicable to our interpretation of section 1292(a)(2)"). Indeed, the *Mohawk* Court discussed Section 1292(b) as a potential avenue of immediate review and reasoned that allowing collateral order appeals of adverse attorney-client privilege rulings was not necessary to avoid hardship given Section 1292(b) and other review mechanisms. *See Mohawk*, 130 S. Ct. at 607-08. Thus, *Mohawk* only reinforces the propriety of interlocutory appeal where the statutory standards of Section 1292(b) are satisfied.

Here, Section 1292(b)'s mechanism should be exercised because federal jurisdiction is a controlling and substantially disputed question of law. Certification is the best mechanism for preserving federal judicial resources in these six cases.

## IV. There Is No "Uncontroverted Factual Showing."

Defendants' response relies on the assertion that, "Here, Defendants made an uncontroverted factual showing that their payment protection plans extend additional credit to cardholders." Def. Resp., p. 14. Defendants also argue that, "Defendants have presented the Court with detailed declarations explaining how their payment protection plans extend additional credit to consumers." Def. Resp., pp. 12-13. To the contrary, there is no "uncontroverted" factual showing and there is no explanation at all – much less a detailed one – applicable to all Defendants.

First, the Attorney General disputes the propriety of the factual showing alleged by Defendants. *See* Pl.'s Remand Reply, Dkt. 78, at pp. 16-18 & n.7 (contending that the declarations are not appropriately considered, are only relevant to three of six cases, do not change the *JPMorgan* analysis, and do not deny that the fees are charges specifically assigned to cover the payment "protection" service). Defendants' argument that their factual showing is uncontroverted is irreconcilable with the briefing filed of record with the Court. Second, the defense declarations on their face only apply to half of the Defendants,

13

do not actually declare that the payment protection plans are "interest",[7] and do not state that as to all – or even an identified portion – of the payment protection plan charges there was *an actual* "extension of credit" enjoyed by customers in consideration for the payments.[8]

## CONCLUSION

The State respectfully moves this Court to certify the Court's Order Denying the Motions to Remand (Dkt. 94), for interlocutory appeal to the Ninth Circuit under 28 U.S.C. § 1292(b). The Attorney General also respectfully requests a stay of these proceedings pending the outcome of the Ninth Circuit's review.

---

[7] The declarations describe the possibility of extensions of credit, but without literally stating that "the payment protection plan charges are interest." *See* Dkt. 75-2, 75-3, 75-4.

[8] Defendants contend that there are "various ways" in which the plans might operate to suspend or cancel obligation "under certain circumstances" (Def. Resp., p. 10). For clarity, the Attorney General does not concede that the record substantiates the defense arguments, nor does he concede that the declarations demonstrate that consumers in this State actually receive plan benefits.

14

DATED: Honolulu, Hawai'i, January __4th__, 2013

                                                      Respectfully submitted,

_____
CRONIN, FRIED, SEKIYA, KEKINA & FAIRBANKS
L. RICHARD FRIED, JR.  0764-0
PATRICK F. McTERNAN  4269-0
600 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii 96813
Tel.: 808-524-1433/Fax: 808-536-2073
rfried@croninfried.com
pmcternan@croninfried.com

BARON & BUDD, P.C.
LAURA J. BAUGHMAN, ESQ.
*(Admitted Pro Hac Vice)*
J. BURTON LeBLANC, IV, ESQ.
*(Admitted Pro Hac Vice)*
S. ANN SAUCER, ESQ.
*(Admitted Pro Hac Vice)*
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Tel.: 214-521-3605/Fax: 214-520-1181
lbaughman@baronbudd.com
bleblanc@baronbudd.com
asaucer@baronbudd.com

***Attorneys for Plaintiff***